**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)**

**ADEDAYO FALADE,** individually            :
and as parent and next friend on behalf of    :
K.F., a minor                               :
8557 Crooked Tree Lane                      :
Laurel, MD 20724                            :
                                            :
And                                         :
                                            :
**DEMETRIA STUBBS,** individually            :
and as parent and next friend on behalf of    :
K.F., a minor                               :
8557 Crooked Tree Lane                      :
Laurel, MD 20724                            :
                                            :
            Plaintiffs,          :
                                            :
v.                                          :    Civil Action No.:
                                            :
**AMAZON.COM INC.**                          :
410 Terry Avenue North                      :    **<u>JURY TRIAL DEMANDED</u>**
Seattle, WA 98109                           :
                                            :
<u>SERVE ON RESIDENT AGENT</u>              :
Corporation Service Company                 :
251 Little Falls Drive                      :
Wilmington, DE 19808                        :
                                            :
And                                         :
                                            :
**AMAZON.COM SALES INC.**                    :
410 Terry Avenue North                      :
Seattle, WA 98109                           :
                                            :
<u>SERVE ON RESIDENT AGENT</u>              :
CSC-Lawyers Incorporating Service Co.       :
7 St. Paul Street, Suite 820                :
Baltimore, MD 21202                         :
                                            :
And                                         :
                                            :
**AMAZON.COM SERVICES LLC**                  :
410 Terry Avenue North                      :
Seattle, WA 98109                           :
                                            :
<u>SERVE ON RESIDENT AGENT</u>              :
CSC-Lawyers Incorporating Service Co.       :
7 St. Paul Street, Suite 820                :
Baltimore, MD 21202                         :
                                            :

And                                              :
                                                 :
**NINGBO HAOBO HEALTH**                          :
**MANAGEMENT CO., LTD.**                          :
No. East 22, Xinshi Road                         :
Hushan Sub-District Cixi                          :
Zhejiang, 315300 China                           :
                                                 :
                 Defendants.                     :

## COMPLAINT

Plaintiffs, Adedayo Falade and Demetria Stubbs, individually and as parents and next friends on behalf of their minor child, K.F. (hereinafter collectively referred to as "Plaintiffs"), by undersigned counsels, Hong Suk "Paul" Chung, Daniel P. Connors, and the law firm of Shulman Rogers, P.A., hereby file this Complaint and for their cause of action state as follows:

## PARTIES

1.      At all times relevant hereto, Plaintiff Adedayo Falade (hereinafter "Mr. Falade") was an adult resident of Anne Arundel County, Maryland.

2.      At all times relevant hereto, Plaintiff Demetria Stubbs (hereinafter "Ms. Stubbs") was an adult resident of Anne Arundel County, Maryland.

3.      Ms. Stubbs and Mr. Falade are the natural parents and legal guardians of their minor child, K.F., DOB: 4/28/16, (hereinafter "K.F.").

4.      At all times relevant hereto, Mr. Falade and Ms. Stubbs were residing together with K.F. and other children in Anne Arundel County, Maryland.

5.      Upon information and belief, and at all times relevant hereto, Amazon.com Inc. (hereinafter "Amazon.com") was a corporation organized and existing under the laws of Delaware, with its principal place of business located in Seattle, Washington.

2

6.      Upon information and belief, and at all times relevant hereto, Amazon.com Sales, LLC (hereinafter "Amazon Sales") was a limited liability company organized and existing under the laws of Delaware, with its principal place of business located in Seattle, Washington.

7.      Upon information and belief, and at all times relevant hereto, Amazon.com Services, Inc. (hereinafter "Amazon Services") was a corporation organized and existing under the laws of Delaware, with its principal place of business located in Seattle, Washington.

8.      Upon information and belief, Amazon.com, Amazon Sales, and Amazon Services (hereinafter collectively referred to as "Amazon") collectively own, manage, and oversee the operations of the online marketplace known as Amazon.com. In addition to facilitating third-party sales, Amazon is actively engaged in the production, manufacturing, distribution, and direct sales of various goods and products through its online platform.

9.      Upon information and belief, and at all times relevant hereto, Defendant Ningbo Haobo Health Management Co., Ltd. (hereinafter "Ningbo") was a company organized and existing under the laws of the People's Republic of China, with its principal place of business located in Zhejiang, China. Ningbo is neither registered to conduct business in the State of Maryland nor does it have a designated resident agent within the State. Additionally, there is no record of Ningbo maintaining any official presence or authorization to operate as a business entity in Maryland or the United States.

10.     In material respects, all of the claims and events alleged herein occurred in Anne Arundel County, Maryland.

**JURISDICTION AND VENUE**

11.     The jurisdiction of this Court over this civil action exists pursuant to 28 U.S.C. §1332 as the parties in this matter are citizens and corporations of different states and the matter in controversy exceeds the sum or value of $75,000.00.

12.     Venue is proper in this judicial district pursuant to 28 U.S.C. §1391 as the Defendants transact business within this judicial district, and are thus subject to the jurisdiction of this Court.

**FACTUAL ALLEGATIONS COMMON TO ALL COUNTS**

13.     In 2022, Plaintiffs owned and used an ICLBC Tabletop Fire Pit ("Tabletop Fire Pit").  Upon information and belief, the Tabletop Fire Pit was designed, manufactured, and introduced into the stream of commerce by Defendant Ningbo, who was engaged in the business of designing, manufacturing, licensing, testing, advertising, marketing, warranting, selling, and distributing various types of items, including the Tabletop Fire Pit which physically injured K.F. Defendant Ningbo sold the Tabletop Fire Pit via Amazon's online marketplace and distribution system.

14.     The Tabletop Fire Pit had been purchased through Amazon's website on November 25, 2022 by Jasmine Stubbs ("Ms. J. Stubbs"), Ms. Demetria Stubbs' sister.  The Amazon Order Number for the purchase is 111-4225180-7348228. Ms. J. Stubbs later gifted the product to the Plaintiffs. Given the size and reputation of Amazon as a trustworthy online marketplace, Ms. J. Stubbs and the Plaintiffs believed the Tabletop Fire Pit was safe to use as warranted by Amazon's website.

15.     Because Amazon had heavily promoted its own image as a safe and trustworthy company, Plaintiffs never imagined Amazon would have allowed dangerous products like the

Tabletop Fire Pit to be available for sale on its website. Additionally, through their previous experiences using their Amazon accounts to purchase products on Amazon's website, the Plaintiffs were familiar with the robust communication system Amazon maintained with its account holders and believed that if Amazon ever learned the Tabletop Fire Pit was dangerous, then Amazon would conduct a prompt and thorough investigation of that product and, when appropriate, send a similar alert to purchasers of that product and/or completely remove the product from its listings.

16.     Amazon voluntarily undertakes to provide several safety-related services for the benefit of individuals who use products purchased through Amazon's website. Amazon's purported goal in offering these services has been to fully vet the safety and reliability of not just the products being sold on Amazon's website but also the sellers whose products were being sold. Amazon's affirmative representations of reliability and its sales-enhancing services were in place long before the Tabletop Fire Pit was purchased, and they distinguished Amazon from other online marketplaces that acted as hands-off platforms, instead establishing that Amazon's self-chosen role was that of an active marketplace regulator. Amazon has held that role during all times pertinent to Plaintiffs' incident.

17.     Amazon provided extensive details on its voluntary undertaking in a post it made on its own website in 2019:[1]

> *"Amazon strives to be Earth's most customer-centric company, where people can find and discover the widest possible selection of safe and authentic goods, and we work hard to earn and maintain your trust. In 2018 alone, **we invested over \$400 million to protect our store and our customers and built robust programs to ensure products offered are safe, compliant, and authentic.** Amazon offers customers hundreds of millions of items, and we have developed, and continuously refine and improve, our tools that prevent suspicious, unsafe, or non-compliant products from being listed in our store.*
>
> *Our proactive measures begin when a seller attempts to open an account. **Our new seller account vetting includes a number of verifications and uses***

---

[1] Imps://www.aboutamazon.cominewskompany-news/product-safety-and-compliance-in-our-store

*proprietary machine learning technology that stops bad actors before they can register or list a single product in our store.* All products offered in our stores must comply with applicable laws and regulations, and our own policies. For example, we require toys to be tested to relevant safety standards set by the Consumer Product Safety Commission. **We have a dedicated global team of compliance specialists that review submitted safety documentation, and we have additional qualification requirements that sellers must meet to offer products.** In 2018, our teams and technologies proactively blocked more than three billion suspect listings for various forms of abuse, including non-compliance, before they were published to our store.

Once a product is available in our store, we continuously scan our product listings and updates to find products that might present a concern. Every few minutes, our tools review the hundreds of millions of products, scan the more than five billion attempted daily changes to product detail pages, and analyze the tens of millions of customer reviews that are submitted weekly for signs of a concern and investigate accordingly. Our tools use natural language processing and machine learning, which means new information is fed into our tools daily so they can learn and constantly get better at proactively blocking suspicious products.

In addition, we provide a number of ways for regulatory agencies, industry organizations, brands, customers, and our customer service teams to report safety issues. **When we receive these reports, we move quickly to protect customers, remove unsafe products from our store, and investigate. For example, if a customer reports a concern with a product, a customer service associate can instantly trigger an investigation.** Additionally, because of our direct relationships with customers, we are able to trace and directly notify customers who purchased a particular product online and alert them to a potential safety issue—our systems are far more effective than other online and offline retailers and customers can feel confident they'll have the information they need. [...] **We invest significant resources to protect our customers and have built robust programs designed to ensure products offered for sale in our store are safe and compliant.** We want customers to shop with confidence and if ever a customer has a concern, they can contact our customer service team, and we will investigate."

18.    Similarly, Amazon's Help and Customer Service web page explains that:

**"Amazon works to protect customers** from risks of injury associated with products offered on Amazon by looking into and taking action on reported complaints and incidents...

**Amazon monitors the products sold on fits] website** for product safety concerns. In concerning, situations, we may remove the product from the website, reach out

6

*to sellers and manufacturers for additional information, place relevant warnings on the product detail page or take other actions depending on the situation...*

*[Amazon] reache[s] out to any customer that previously purchased impacted products (and any seller that may have offered such products) to inform them about the recall."*

**About Product Safety at Amazon**

"The Product Safety Team at Amazon works to protect Amazon customers from risks of injury associated with products offered on Amazon by looking into and taking action on reported safety complaints and incidents.

Product Safety

Amazon monitors the products sold on our website for product safety concerns. In concerning situations, we may remove the product from the website, reach out to sellers and manufacturers for additional information, place relevant warnings on the product detail page, or take other actions depending on the situation.

We may also report product safety concerns to applicable government agencies in order to bolster their safety data and help facilitate any necessary recalls.

Recalls

Amazon monitors public recalls alert websites and also learns of recalls directly from manufacturers and vendors. When we learn of a recall, we suspend all impacted product offerings from our website and quarantine any related inventory in our fulfillment centers. We also reach out to any customers that previously purchased impacted products (and any seller that may have offered such products) to inform them about the recall.

If you have a specific question regarding a product recall, please contact the product manufacturer directly. If the manufacturer can't be reached, please contact the seller of the item. For more information about third party sellers on Amazon.com, go to: About Ordering from a Third-Party seller. For Amazon-owned brands (such as Amazon Elements, AmazonBasics, Kindle, and Pinzon), please contact Amazon Customer Service."

19.    Other related services that Amazon offers for the benefit of users include: approval of all Fulfillment by Amazon ("FBA") products; provision of 24/7 customer service; receiving and processing all FBA product returns (during which time Amazon inspects the FBA product and determines whether the product can be resold); and categorizing FBA products with the help of both employees and computers/robots, labeling FBA products, and moving them through the distribution process.[2]

---

[2] This language comes directly from a Draft Administrative Complaint published on June 14, 2021, by the U.S. Consumer Product Safety Commission and publicized online in a CNN article dated July 15, 2021: hflps://www.enn.comi2021/07/15/tech/cpsc-sues-amazon/index.html https://cpsc.gov/s3fs-publ ic/pdfs/recall/lawsuits/abc/00 I -In-re-Amazon-col⁻n-ine.pd t"?Tv LLx Hy I UMtiz3BpfXaKjOyl ibObYAiU

20.     The contracts between Amazon and its merchants state that Amazon: (a) has the authority to format the product's listing on its online marketplace, which includes how a listing is displayed to consumers; (b) may reject products that Amazon determines are illegal, sexually explicit, defamatory, or obscene; and (c) will require merchants to communicate with their customers exclusively through Amazon's platform, which enables customers to provide user comment reviews on a product's web page listing.

21.     Amazon has an established history of monitoring the safety of the products on its website and taking unilateral action to remove dangerous products from the available listings and to warn consumers who purchased such products of the potential hazards they present. This history includes, for example, Amazon's recall on June 30, 2021 of 4,900 units of children's sleepwear garments that were being sold on Amazon's site by Chinese companies located in the city of Shenzhen. At all relevant times, Amazon maintained the same kind of control over the Tabletop Fire Pit.

22.     Regarding the Tabletop Fire Pit sold by Amazon, on October 17, 2024, the U.S. Consumer Product Safety Commission (CPSC) issued the recall of 89,500 similar tabletop fire pits. The recall was initiated after CPSC received 31 reports of "flame jetting and flames escaping" from the fire pits. At that time, according to CPSC, "[f]lame jetting is a serious event that can occur while pouring alcohol, when fire flashes back to the alcohol container and suddenly propels burning alcohol out of the container and onto people nearby." The CPSC advised that alcohol can splash, spill, or leak out of the fire pit reservoir while using it. This could potentially lead to a flash fire that can spread and create larger, hotter flames outside of the unit.

23.     At that time, the CPSC further advised that "[c]onsumers should immediately stop using the recalled fire pits and dispose of them. **Do NOT resell or donate them.** It is a violation of federal law to sell or distribute recalled products."

24.     On December 19, 2024, the CPSC issued the following consumer alert: "**Stop Using Alcohol or Other Liquid-Burning Fire Pits That Violate Voluntary Standards and Present Flame Jetting and Fire Hazards; Two Deaths and Dozens of Serious Burn Injuries Reported**[.]" At that time, the CPSC was "urging consumers not to buy or use fire pits meant to burn pooled alcohol or other liquid fuel. These products are also sold as tabletop fire pits, fire pots, miniature fireplaces, or portable fires for indoor use. **Consumers should immediately stop using and dispose of these products. Sellers should stop selling these products."**

25.     At that time, the CPSC stated the following:

"These fire pits are extremely dangerous and have been associated with two deaths and at least 60 injuries since 2019. This CPSC consumer alert follows the agency's recent warning to stop using FLIKRFIRE Tabletop Fireplaces and the recall of Colsen-branded tabletop fire pits.

Fire pits that require consumers to pour isopropyl (rubbing) alcohol or other liquid fuel into an open container or bowl and then ignite the pooled liquid in the same location it was poured violate the requirements in voluntary safety standard ASTM F3363-19. ASTM F3363-19 is designed to prevent pool fires in which flames burn along the surface of pooled or spilled flammable liquids, and flame jetting in which flames erupt from containers of liquid fuel.

Isopropyl (rubbing) alcohol, ethanol/bioethanol, and similar liquid fuels burn with flame temperatures over 1,600°F and can cause third degree burns in less than one second. Igniting a pool of alcohol or other liquid fuel in a fire pit's open container creates an uncontrollable pool fire, which can suddenly produce larger, hotter flames that can spread beyond the fire pit product.

Flame jetting, a second hazard, can occur when refilling alcohol or other liquid-burning fire pits if any flame is present. A small flame in the fire pit can be hard to see and can ignite alcohol or other liquid fuel as it is poured, causing an explosion that propels flames and burning liquid onto the consumer or bystanders. CPSC's flame jetting safety video demonstrates the potential force of flame jetting and the long distances flames and burning liquid can travel.

9

The hazardous alcohol or other liquid-burning fire pits are sold by many retailers and e-commerce sites. **CPSC urges consumers to immediately stop use and dispose of these alcohol or other liquid-burning fire pits, and for sellers to stop selling them**."

26.     Per the CPSC consumer warning, "[t]hese fire pits have been associated with two deaths and at least 60 injuries since 2019."

27.     Amazon, as a seller of these alcohol or other liquid-burning fire pits, was therefore on notice of the unreasonably dangerous nature of the Tabletop Fire Pit before it was purchased and before K.F. was injured by it. The underlying issue that made the Tabletop Fire Pit and other similar products susceptible to flame jetting was something a simple investigation by Amazon could have easily uncovered, especially since consumer injuries had been occurring since 2019 and the "fire pits that require consumers to pour isopropyl (rubbing) alcohol or other liquid fuel into an open container or bowl and then ignite the pooled liquid in the same location it was poured violated the requirements in voluntary safety standard ASTM F3363-19.  The Tabletop Fire Pit failed to comply with the voluntary safety standard ASTM F3363-19.

28.     Despite this, Amazon did nothing to mitigate this danger by: 1) properly vetting Defendant Ningbo before listing their products on Amazon's website; 2) properly vetting the Tabletop Fire Pit before listing it on Amazon's website; 3) recalling, removing, or barring the Tabletop Fire Pit from Amazon's website, or; 4) warning or otherwise notifying the consumers, including the Plaintiffs, about the unreasonably dangerous nature of the Tabletop Fire Pit.

29.     On December 30, 2024, while the Plaintiffs were operating the Tabletop Fire Pit under normal and intended conditions, an unexpected flame jetting incident suddenly occurred without any prior warning. This unforeseen event resulted in significant injuries to K.F.

30. K.F. sustained severe 2nd and 3rd degree burns on his face and body, which resulted in a hospital stay, medical intervention, multiple surgeries, prolonged period of rehabilitation and left him with significant scarring and permeant injuries.

## COUNT I- PRODUCTS LIABILITY- DEFECT IN DESIGN-STRICT LIABILITY
### (Against Defendant Ningbo Haobo Health Management Co., Ltd.)

31. The substance of the foregoing factual allegations are hereby re-alleged and incorporated by reference herein, and further;

32. The Tabletop Fire Pit was designed, manufactured and sold by Defendant Ningbo. Defendant Ningbo had the duty to design, manufacture, test, market, advertise, label, distribute, and sell the Tabletop Fire Pit so they are reasonably safe for foreseeable use.

33. The Tabletop Fire Pit was placed in the stream of commerce and sold through Amazon in a defective and unreasonably dangerous condition in that it contained one or more conditions that rendered it defective and unreasonably dangerous in light of its nature and intended use, including causing fire flash back to the alcohol container and suddenly propelling burning alcohol out of the container and onto people nearby.

34. The Tabletop Fire Pit reached the Plaintiffs without any substantial change in its condition and was in that same condition at the time of the injury. The Tabletop Fire Pit was used in the manner intended and recommended, or reasonably foreseeable by Defendant Ningbo.

35. On or about December 30, 2024, while Ms. Stubbs was using the Tabletop Fire Pit in a foreseeable manner, the Tabletop Fire Pit flashed back to the alcohol container and suddenly propelled burning alcohol out of the container onto people nearby including K.F.

36. The traumatic injuries suffered by K.F. occurred because of the defective design of the Tabletop Fire Pit. If the Tabletop Fire Pit had not been defectively designed, K.F. would not have been injured.

11

37.     As a direct and proximate result of the defect described above, K.F. suffered extreme pain and suffering which continues to the present and which is expected to continue. The K.F. has experienced debilitating, permanent disfigurement of his face, neck, chest and both arms.  K.F. has incurred medical expenses and future medical expense are expected.

WHEREFORE, Plaintiffs Adedayo Falade and Demetria Stubbs, both individually and as parent and next friend on behalf of K.F., a minor, demand judgment against the Defendants Amazon.com, Inc., Amazon.com Sales, Inc., Amazon.com Services, LLC and Ningbo Haobo Health Management Co., Ltd, jointly and severally, in an amount to exceed $75,000, for economic and non-economic damages, plus all costs and expense of this litigation, plus post-judgment interest at the legal rate from the date of the judgment.

### COUNT II- PRODUCTS LIABILITY – DEFECT IN MANUFACTURE – STRICT LIABILITY (Against Defendant Ningbo Haobo Health Management Co., Ltd.)

38.     The substance of the foregoing factual allegations are hereby re-alleged and incorporated by reference herein, and further;

39.     In December, 2022, the Plaintiffs were gifted the Tabletop Fire Pit by Ms. J. Stubbs who had purchased the Tabletop Fire Pit on Amazon.  The Tabletop Fire Pit was designed, manufactured and sold by Defendant Ningbo.

40.     The Tabletop Fire Pit was placed in the stream of commerce and sold through Amazon in a defective and unreasonably dangerous condition in that it contained one or more conditions that rendered it defective and unreasonably dangerous in light of its nature and intended use, including causing fire flash back to the alcohol container and suddenly propelling burning alcohol out of the container and onto people nearby.

41.     The Tabletop Fire Pit reached the Plaintiffs without any substantial change in its

12

condition and was in that same condition at the time of the injury.  The Tabletop Fire Pit was used in the manner intended and recommended, or reasonably foreseeable by Defendant Ningbo.

42.     On or about December 30, 2024, while Ms. Stubbs was using the Tabletop Fire Pit in a foreseeable manner, the Tabletop Fire Pit flashed back to the alcohol container and suddenly propelled burning alcohol out of the container onto people, nearby including K.F.

43.     The traumatic injuries suffered by K.F. occurred because of the defective design of the Tabletop Fire Pit.  If the Tabletop Fire Pit had not been defectively designed, K.F. would not have been injured.

44.     As a direct and proximate result of the defect described above, K.F. suffered extreme pain and suffering which continues to the present and which is expected to continue. The K.F. has experienced debilitating, permanent disfigurement of his face, neck, chest and both arms.  K.F. has incurred medical expenses and future medical expense are expected.

WHEREFORE, Plaintiffs Adedayo Falade and Demetria Stubbs, both individually and as parent and next friend on behalf of K.F., a minor, demand judgment against the Defendants Amazon.com, Inc., Amazon.com Sales, Inc., Amazon.com Services, LLC and Ningbo Haobo Health Management Co., Ltd, jointly and severally, in an amount to exceed $75,000, for economic and non-economic damages, plus all costs and expense of this litigation, plus post-judgment interest at the legal rate from the date of the judgment.

### COUNT III – PRODUCTS LIABILITY –
### DEFECT IN WARNING – STRICT LIABILITY
### (Against Defendant Ningbo Haobo Health Management Co., Ltd.)

45.     The substance of the foregoing factual allegations are hereby re-alleged and incorporated by reference herein, and further;

46.     In December, 2022, the Plaintiffs were gifted the Tabletop Fire Pit by Ms. J.

Stubbs who had purchased the Tabletop Fire Pit on Amazon.  The Tabletop Fire Pit was designed, manufactured and sold by Defendant Ningbo.

47.     The Tabletop Fire Pit was placed in the stream of commerce and sold through Amazon in a defective and unreasonably dangerous condition in that it contained one or more conditions that rendered it defective and unreasonably dangerous in light of its nature and intended use, including causing fire flash back to the alcohol container and suddenly propelling burning alcohol out of the container and onto people nearby.

48.     The Tabletop Fire Pit reached the Plaintiffs without any substantial change in its condition and was in that same condition at the time of the injury.  The Tabletop Fire Pit was used in the manner intended and recommended, or reasonably foreseeable by Defendant Ningbo.

49.     On or about December 30, 2024, while Ms. Stubbs was using the Tabletop Fire Pit in a foreseeable manner, the Tabletop Fire Pit flashed back to the alcohol container and suddenly propelled burning alcohol out of the container onto people, nearby including K.F.

50.     The traumatic injuries suffered by K.F. occurred because of the defective design of the Tabletop Fire Pit, in that the Tabletop Fire Pit to be non-defective and reasonably safe for use should have contained or been accompanied by a warning that alcohol  or any other flammable liquid should not be added from a container or bowl and then ignite the pooled liquid over an exposed flame.  If the Tabletop Fire Pit had contained or been accompanied by such warnings, K.F. would not have been injured.

51.     As a direct and proximate result of the defect described above, K.F. suffered extreme pain and suffering which continues to the present and which is expected to continue. K.F. has experienced debilitating, permanent disfigurement of his face, neck, chest and both arms.  K.F. has incurred medical expenses and future medical expense are expected.

14

WHEREFORE, Plaintiffs Adedayo Falade and Demetria Stubbs, both individually and as parent and next friend on behalf of K.F., a minor, demand judgment against the Defendants Amazon.com, Inc., Amazon.com Sales, Inc., Amazon.com Services, LLC and Ningbo Haobo Health Management Co., Ltd, jointly and severally, in an amount to exceed $75,000, for economic and non-economic damages, plus all costs and expense of this litigation, plus post-judgment interest at the legal rate from the date of the judgment.

### COUNT IV- BREACH OF EXPRESS AND IMPLIED WARRANTIES
### (Against Defendant Ningbo Haobo Health Management Co., Ltd.)

52.     The substance of the foregoing factual allegations are hereby re-alleged and incorporated by reference herein, and further;

53.     Defendant Ningbo was a merchant and seller with respect to the Tabletop Fire Pit.

54.     In order to induce the purchase and/or use of the Tabletop Fire Pit, Defendant Ningbo expressly and/or impliedly warranted to potential users of the Tabletop Fire Pit that it was safely designed, tested, and manufactured and was safe for the uses for which it was designed and/or advertised to be used. Express and/or implied warranties were contained in the information on the product pages on Amazon's website and elsewhere.

55.     Defendant Ningbo represented to the public that they possessed superior knowledge and skill in the manufacture, design and sale of the said Tabletop Fire Pit and consumers, like the Plaintiffs relied on this superior manufacture, design and sale in selecting and purchasing the Tabletop Fire Pit when making this purchase.

56.     Defendant Ningbo breached said warranties in that the Tabletop Fire Pit was not safe to be used for the purposes for which it was manufactured and/or advertised.

57.     K.F. was injured as a result of the detrimental reliance upon Defendant Ningbo's express and/or implied warranties.

58.     As a direct and proximate result of the foregoing breaches of express and/or implied warranties, K.F. suffered extreme pain and suffering which continues to the present and which is expected to continue.  K.F. has experienced debilitating, permanent disfigurement of his face, neck, chest and both arms.  K.F. has incurred medical expenses and future medical expense are expected.

WHEREFORE, Plaintiffs Adedayo Falade and Demetria Stubbs, both individually and as parent and next friend on behalf of K.F., a minor, demand judgment against the Defendants Amazon.com, Inc., Amazon.com Sales, Inc., Amazon.com Services, LLC and Ningbo Haobo Health Management Co., Ltd, jointly and severally, in an amount to exceed $75,000, for economic and non-economic damages, plus all costs and expense of this litigation, plus post-judgment interest at the legal rate from the date of the judgment.

**COUNT V – NEGLIGENCE**
**(<u>Against Defendant Ningbo Haobo Health Management Co., Ltd.</u>)**

59.     The substance of the foregoing factual allegations are hereby re-alleged and incorporated by reference herein, and further;

60.     Defendant Ningbo had a duty to exercise reasonable care in the design, manufacture, testing, sale, labeling, and/or distribution of the Tabletop Fire Pit it placed into the stream of commerce, including a duty to assure that the product did not cause unreasonable or unnecessary injury.

61.     Defendant Ningbo breached their duty of care to the Plaintiffs through its negligent acts and omissions. Defendant Ningbo did not exercise reasonable care in the warning, design, manufacture, sale, testing, labeling, and/or distribution into the stream of commerce of the Tabletop Fire Pit in that Defendant Ningbo knew or should have known that the Tabletop Fire Pit could cause serious injuries.

62.     Defendant Ningbo was negligent in the design, manufacture, sale, testing, and/or distribution of the Tabletop Fire Pit in that it: (a) failed to use due care in designing, formulating, developing, testing, and manufacturing the Tabletop Fire Pit so as to avoid or warn against the described risks to consumers who used the Tabletop Fire Pit; (b) placed an unsafe product into the stream of commerce; and (c) failed to discover or warn of the dangers associated with the use of the Tabletop Fire Pit despite having actual and/or constructive knowledge of such dangers.

63.     Defendant Ningbo knew or should have known that the Plaintiffs and other users could foreseeably suffer injuries as a result of Defendant Ningbo's failure to exercise ordinary care as described above.

64.     Plaintiffs neither contributed to the negligence which caused the injury nor assumed the risk of the injuries sustained.

WHEREFORE, Plaintiffs Adedayo Falade and Demetria Stubbs, both individually and as parent and next friend on behalf of K.F., a minor, demand judgment against the Defendants Amazon.com, Inc., Amazon.com Sales, Inc., Amazon.com Services, LLC and Ningbo Haobo Health Management Co., Ltd, jointly and severally, in an amount to exceed $75,000, for economic and non-economic damages, plus all costs and expense of this litigation, plus post-judgment interest at the legal rate from the date of the judgment.

**COUNT VI- NEGLIGENCE**
**(Against Defendants Amazon.com, Inc.,**
**Amazon.com Sales, Inc., and Amazon.com Services, Inc.)**

65.     The substance of the foregoing factual allegations are hereby re-alleged and incorporated by reference herein, and further;

66.     At all pertinent times, Amazon had voluntarily undertaken to thoroughly vet the safety and reliability of: 1) all sellers who were listing products on Amazon's website and; 2) all

17

products being sold on Amazon's website. Amazon had also voluntarily undertaken to thoroughly investigate all reports of dangerous products on its website, and to protect individuals who used products purchased through Amazon by notifying them of unsafe products. These services were undertaken by Amazon for the benefit of all individuals who used products that had been purchased through Amazon's website.

67.     The Tabletop Fire Pit was a product being sold on Amazon's website, and Amazon had voluntarily undertaken to fully vet the safety and reliability of the Tabletop Fire Pit before it was listed on Amazon's website. Amazon had also voluntarily undertaken to investigate the dangerous latent condition of the Tabletop Fire Pit once it was reported by the CPSC, and Amazon was aware of the dangerous condition that injured K.F.  Finally, Amazon had voluntarily undertaken to protect the consumers, including the Plaintiffs from the Tabletop Fire Pit by recalling, removing, or barring the Tabletop Fire Pit from Amazon's website or by warning or otherwise notifying the consumers about the unreasonably dangerous nature of the Tabletop Fire Pit.

68.     Based on its voluntary undertaking, Amazon owed the consumers, including the Plaintiffs a duty to exercise reasonable care in the performance of the above-described safety-related services, and also owed the consumers, including the Plaintiffs a duty to use the same degree of care that a reasonably careful person would use to avoid harm to others under similar circumstances.

69.     Although Amazon knew or should have known the above-described safety-related services were necessary for the consumer's, including the Plaintiffs' protection, it failed to exercise reasonable care in performing those services, thereby violating the above duties. Specifically, Amazon:

18

(a)    failed to properly vet Defendant Ningbo;

(b)    failed to properly vet the Tabletop Fire Pit;

(c)    exposed and introduced the Plaintiffs, and specifically K.F. to a dangerous product by recruiting Defendant Ningbo to sell on Amazon;

(d)    exposed and introduced the Plaintiffs, and specifically K.F. to a dangerous product by allowing the Tabletop Fire Pit to be listed on Amazon's website;

(e)    ignored the consumer warnings raised by the CPSC indicating the Tabletop Fire Pit was dangerous and failed to properly investigate the dangerous latent condition of the Tabletop Fire Pit;

(f)    failed to warn the consumers, including the Plaintiffs about the unreasonably dangerous latent condition of the Tabletop Fire Pit of which Amazon was aware or should have been aware of.

70.    The Plaintiffs relied upon Amazon to perform the above-described safety-related services because Ms. J. Stubbs would not have purchased the Tabletop Fire Pit through Amazon and gifted it to the Plaintiffs if she had known Amazon was not the safe and reliable marketplace it put itself out to be.  Ms. J. Stubbs purchased the Tabletop Fire Pit as a gift for the Plaintiffs because she believed it would be more reliable than other tabletop fire pits because it was sold on Amazon's website. Amazon guaranteed and promoted the Tabletop Fire Pit as being safe and lulled Ms. J. Stubbs  —who was unaware it was coming from an unreliable Chinese manufacturer—into a false sense of security. Ms. J. Stubbs and the Plaintiffs trusted Amazon had confirmed the reliability of Defendant Ningbo and the safety of the Tabletop Fire Pit when they purchased and used the Tabletop Fire Pit.

71.    Additionally, Amazon's failure to properly vet the safety and reliability of Defendant Ningbo and the Tabletop Fire Pit and failure to properly investigate and warn about the dangerous latent condition of the Tabletop Fire Pit, even after learning of it significantly increased the Plaintiffs' risk of harm because the Plaintiffs would never have come across the Tabletop Fire Pit and

purchased it but for its being listed and promoted as a safe product on Amazon's website. Ms. J. Stubbs and the Plaintiffs also would never have come across Defendant Ningbo at all but for Amazon's active provision of logistical assistance to and recruitment of Defendant Ningbo. Similarly, the Plaintiffs would not have used the Tabletop Fire Pit on the day K.F. was injured if they had been alerted to the Tabletop Fire Pit's danger by Amazon.

72.     As a direct and proximate result of the defect described above, K.F. suffered extreme pain and suffering which continues to the present and which is expected to continue. K.F. has experienced debilitating, permanent disfigurement of his face, neck, chest and both arms.  K.F. has incurred medical expenses and future medical expense are expected.

73.     Plaintiffs neither contributed to the negligence which caused this injury nor assumed the risk of the injuries sustained.

WHEREFORE, Plaintiffs Adedayo Falade and Demetria Stubbs, both individually and as parent and next friend on behalf of K.F., a minor, demand judgment against the Defendants Amazon.com, Inc., Amazon.com Sales, Inc., Amazon.com Services, LLC and Ningbo Haobo Health Management Co., Ltd, jointly and severally, in an amount to exceed $75,000, for economic and non-economic damages, plus all costs and expense of this litigation, plus post-judgment interest at the legal rate from the date of the judgment.

Respectfully submitted,

**SHULMAN ROGERS, P.A.**

By: _____

Hong Suk "Paul" Chung (#16223)
Daniel P. Connors (#21329)
12505 Park Potomac Ave., 6th Floor
Potomac, Maryland 20854
Tel.: (301) 230-5230
Fax: (301) 230-2891
pchung@shulmanrogers.com
dconnors@shulmanrogers.com

## <u>JURY DEMAND</u>

Plaintiffs elect to have all issued raised herein tried to a jury.

_____

Hong Suk "Paul" Chung

21